IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | |
|---|---|
| LISA MADDOX, M.D. individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SOUTHEAST QSR, LLC and DOES 1 to 25,<br><br>Defendants. | Case No.<br><br><br><br>**COMPLAINT – CLASS ACTION** |

## NATIONWIDE CLASS ACTION COMPLAINT

COMES NOW, Plaintiff LISA MADDOX, M.D. ("Plaintiff"), on behalf of herself and all others similarly situated, and asserts as follows:

## INTRODUCTION

1.  Plaintiff Lisa Maddox, MD, a person with a mobility disability who uses a wheelchair for mobility, brings this action individually and on behalf of all others similarly situated against Defendants Southeast QSR, LLC and DOES 1 through 25 (collectively, "Defendants"), asserting violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (the "ADA"), and its implementing regulations. Defendants collectively own, lease, and/or operate at least fifty-four (54) Taco Bell restaurants in the states of Georgia, Florida, Alabama, and South Carolina. Dr. Maddox's claims arise from her own experience with excessive sloping conditions in purportedly accessible parking spaces, access aisles, and curb ramps ("Parking Area" or "Parking Areas") at places of public accommodation owned, operated, controlled, and/or leased

by Defendants ("Defendants' facilities"), and from site investigations at four (4) of Defendants' facilities also finding excessive sloping conditions.

2. Dr. Maddox asserts that these excessive sloping conditions persist in part as a result of Defendants' existing but inadequate internal maintenance procedure, which fails to ensure compliance with the sloping requirements of the ADA's implementing regulations. *See* 28 C.F.R. §§ 36.101 *et seq*.

3. The ADA expressly authorizes the injunctive relief aimed at modification of **existing** policies, practices, or procedures that Dr. Maddox seeks in this action. In relevant part, the ADA states:

> In the case of violations of . . . this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities. … Where appropriate, injunctive relief shall also include requiring the . . . modification of a policy…

42 U.S.C. § 12188(a)(2).

4. Based on the extensive factual investigation performed by Dr. Maddox's investigators, she believes and therefore asserts that numerous additional facilities owned, controlled, and/or operated by Defendants have Parking Areas that are, or have become, inaccessible to individuals who rely on wheelchairs for mobility due to excessive sloping, demonstrating that Defendants' existing internal maintenance procedure (discussed at ¶¶ 18-27 below) is inadequate and must be modified. 42 U.S.C. § 12188(a)(2).

5. Dr. Maddox brings this action individually and on behalf of all other similarly situated wheelchair users to compel Defendants to (i) remediate all access barriers within the Parking Areas of their facilities, and (ii) modify their existing policies to ensure that their facilities

comply with the ADA's implementing regulations' excessive sloping requirements. 28 C.F.R. §§ 36.101 *et seq*.

6. Consistent with 42 U.S.C. § 12188(a)(2), Dr. Maddox seeks a permanent injunction requiring that:

   a. Defendants remediate excessive sloping within the Parking Areas at Defendants' facilities, consistent with the ADA's implementing regulations;

   b. Defendants modify their existing policies, practices and/or procedures to ensure that the excessive sloping conditions within the Parking Areas at Defendants' facilities do not reoccur; and

   c. Plaintiff's representatives shall monitor Defendants' facilities to ensure that the injunctive relief ordered pursuant to Paragraph 6.a. and 6.b. has been implemented and will remain in place.

7. Plaintiff's claims for permanent injunctive relief are asserted as class claims pursuant to Fed. R. Civ. P. 23(b)(2). Rule 23(b)(2) was specifically intended to be utilized in civil rights cases where the Plaintiff seeks injunctive relief for her or her own benefit and the benefit of a class of similarly situated individuals. To that end, the note to the 1996 amendment to Rule 23 states:

> Subdivision(b)(2). This subdivision is intended to reach situations where a party has taken action or refused to take action with respect to a class, and final relief of an injunctive nature or a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, is appropriate . . .. Illustrative are various actions in the civil rights field where a party is charged with discriminating unlawfully against a class, usually one whose members are incapable of specific enumeration.

## PARTIES

8. Plaintiff Lisa Maddox, M.D. is, and at all times relevant hereto was, a resident of Grovetown, Georgia. Dr. Maddox is a person with a mobility disability. Dr. Maddox developed

3

Complex Regional Pain Syndrome, and in 2006, had her leg amputated. Dr. Maddox is a graduate of the United States Military Academy at West Point and a veteran of the United States Army, serving with distinction from 1989-1991 and then, again, as a general medical officer from 1997-2004 after receiving her medical degree. Now, after retiring, Dr. Maddox is very active in multiple wheelchair sports, including ranking first in the United States Tennis Association Wheelchair Tennis Women's A Division, recently winning a gold medal in pickleball at the National Veterans Wheelchair games, and qualifying for the veteran's national team in the Wheelchair Softball World Series. Dr. Maddox hopes to inspire others to participate in wheelchair sports after suffering injuries and spends her time promoting the importance of mental health among injured veterans.

9. Dr. Maddox is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2), and the regulations implementing the ADA set forth at 28 C.F.R. §§ 36.101 *et seq*.

10. Defendant Southeast QSR, LLC is, and at all times relevant hereto has been, a Delaware corporation, doing business in Georgia, as the owner, lessee, and/or operator of dozens of Taco Bell restaurants. Defendant Southeast QSR, LLC's principal place of business is located at 520 D. Street, Suite C, Clearwater, Florida, 33756.

11. The true names and capacities, whether individual, corporate, associate, or otherwise of the Defendants named herein as DOES 1 through 25, are unknown to Plaintiff at this time. Dr. Maddox will amend this Complaint to assert their true names and capacities when known. She is informed and believes, and thereon alleges, that each of the fictitiously-named Defendants is responsible in some manner for the occurrences alleged in this Complaint.

12. Dr. Maddox asserts that Defendants, including DOE Defendants, and each of them at all times mentioned in this Complaint were the alter egos, affiliates, agents and/or employees

4

and/or employers of their Co-Defendants, under shared management, ownership, and common control of each other, and part of a single franchise group, and in doing the things alleged in this Complaint were acting within the course of such agency, affiliation, shared management, ownership, control, and/or employment and with the permission and consent of their Co-Defendants.

13. Dr. Maddox is further informed and believes, and based thereon alleges, that Defendants collectively own, lease, and/or operate fifty-four (54) Taco Bell restaurants in the states of Georgia, Florida, Alabama, and South Carolina, as described herein.

14. Defendants' facilities are places of public accommodation as defined in 42 U.S.C. §12181(7) and are therefore subject to the requirements of the ADA.

## FACTUAL ASSERTIONS

**Dr. Maddox Has Been Denied Full and Equal Access to Defendants' Facilities**

15. Dr. Maddox visited Defendants' facilities located at 2850 Washington Road, Augusta, Georgia, 30909, where she experienced unnecessary difficulty and risk of physical harm exiting and entering her vehicle and navigating the facilities. She needed to exercise extra care to avoid falling and to safely traverse the area, due to excessive slopes in the purportedly accessible Parking Areas, as set forth in more detail below.

16. Despite this difficulty and risk, Dr. Maddox plans to return to Defendants' facilities. Plaintiff often travels to the area for a variety of reasons. Recently, she traveled through the area to get to downtown Augusta. Dr. Maddox travels through the area multiple times a month as it is the main road to get into downtown Augusta. During those visits Dr. Maddox intends to patronize Defendants' facility due to the convenience of picking up a quick snack, usually either breakfast

5

or lunch.. In October 2023, Dr. Maddox stopped to pick up a burrito for lunch due to the convenience of the location. Furthermore, she intends to return to Defendants' facility to ascertain whether it remains in violation of the ADA.

17. As a result of Defendants' non-compliance with the ADA, Dr. Maddox's ability to access and safely use Defendants' facilities has been significantly impeded and she will be deterred from returning to and fully and safely accessing Defendants' facilities due to the discrimination she has previously encountered there.

**Defendants Repeatedly Deny Individuals with Disabilities**

**Full and Equal Access to Defendants' Facilities**

18. As the owner and/or operator of their facilities, Defendants employ centralized policies, practices, or procedures with regard to the alteration, maintenance, and operation of their facilities.

19. Dr. Maddox is informed and believes, and based thereon alleges, that as Taco Bell franchisees pursuant to franchise agreements, Defendants utilize an "Answer System" commonly referred to a "Manual" (the "Manual") issued by the franchisor when the franchise disclosure document ("FDD") is signed. The Taco Bell's FDD that Defendants are subject to is similar, if not identical, to a previous version found publicly at https://www.franchimp.com/?page=pdf&f=107446_2022.pdf. It is Dr. Maddox's belief that the 4,500-page Manual contains the franchisee's obligations regarding the required "methods, standards, and procedures" and the franchisee agrees to comply with the Manual. FDD, p.13. While the Manual is not available publicly, the FDD provides the Table of Contents. FDD, p. 196-197, Exhibit G.

20. Pursuant to the FDD, Defendants are provided with the Manual and all the accompanying materials, that provide the standards that the franchisee is required to follow—containing "standards, specifications, systems, procedures, requirements and instructions." FDD, p.86. Specifically, the FDD states, in relevant part:

> You must operate your facilities according to methods, standards, and procedures (the "System") that we provide in minute detail. The System is the sole property of us and our affiliates and is embodied in the Franchise Operations Manual, commonly referred to as the Answer System (the "Manual"). We will provide the Manual to you via electronic access to a confidential website, which website also contains our on-line training courses, commonly referred to as OneSource. You agree that it is your responsibility to provide access to the website to those of your employees (but no other persons) for whom the website is intended by us. Your failure to follow the System as described in the Manual is a breach of the Franchise Agreement.
>
> . . .
>
> 3.4 The Franchisee understands, acknowledges and agrees that strict conformity with the System, including the standards, specifications, systems, procedures, requirements and instructions contained in this Agreement and in the Manual, is vitally important to the success not only of the Company, but to the collective success of all Taco Bell franchisees, including the Franchisee, by reason of the benefits all franchisees and the Company will derive from chain uniformity in food products, identity, quality, appearance, facilities and service among all TACO BELL RESTAURANTS. Any failure to adhere to the standards, specifications, requirements or instructions contained in this Agreement or in the Manual shall constitute a material breach of this Agreement.

FDD, p. 42, 86.

21. The FDD further mandates compliance with "[a] variety of regulations, laws, and ordinances govern the operation of a restaurant business." The FDD specifically lists the ADA as a requirement, "Examples include . . . the Americans with Disabilities Act of 1990 ("ADA")

7

governing public accommodations. There may be other laws applicable to your business and we urge you to make further inquiries about these laws. You must comply with all local, state, and federal laws and regulations in the operation of your restaurants." FDD, p. 14.

22. Pursuant to the FDD, Defendants are required to maintain the Restaurant buildings' interior and exterior in compliance with the maintenance policies, practices, and procedures related to "Daily Outside Maintenance." The FDD states:

> 5.0 The Franchisee shall, at the Franchisee's sole cost and expense, maintain and repair the Restaurant, related equipment, signage, improvements, landscaping and the Restaurant premises in conformity with the standards, specifications and requirements of the System, as the same may be designated by the Company from time to time, and as appropriate replace any or all of such items (other than the Restaurant building or premises).

FDD, p. 386.

23. Should Defendants build a new facility, the FDD specifically requires that an ADA inspection occur to ensure full compliance with the ADA. The FDD states, "You must also pay YRSG directly for all ADA inspection costs (which are estimated to cost $2,250). Post Construction ADA Requirement 6.12 Client shall be solely responsible for a post construction Americans with Disabilities Act ("ADA") inspection of each Project (an "ADA Inspection"). Each ADA Inspection shall determine whether the Project complies with the ADA. The inspection shall be completed by a YRSG authorized consultant and a charge of $2,250 shall be added to this Agreement to insure the Project complies with ADA requirements." FDD, p. 178.

24. Defendants are also required to enter into lease agreements containing specific terms setting forth, among other things, Defendants' obligations to comply with the requirements of the ADA and the regulations promulgated thereunder, and to maintain, repair, and/or replace

8

the parking lot, curbs, driveways, and sidewalks on the leased property. Dr. Maddox is further informed and believes, and based thereon alleges, that Defendants have entered into sale-leaseback agreements at several restaurants that are "absolute NNN" or "zero NNN" in nature—for a period of twenty years—meaning the lessee has absolute responsibility for maintaining all the features of the property and the landlord has no responsibility for such maintenance.

25. The FDD requires Defendants to designate a restaurant training manager that will be certified by Taco Bell. The FDD states, "we require that you and one manager successfully complete the training program to our satisfaction" and "[t]raining is conducted by a restaurant training manager we certify, in an approved company owned restaurant that is geographically convenient to the attendees whenever possible and, for franchise applicants, should be scheduled to finish 4 to 6 weeks prior to the scheduled opening of your Unit." FDD, p. 41. The FDD further states:

> We require that all new franchisees attend our Starting Bell brand immersion course at our Restaurant Support Center in Irvine, CA. This course is additional to and separate from the required restaurant training described in the table below. It is a 3-day course at which new franchisees will develop the tools and know how to become a successful Taco Bell franchisee, experience and become champions of the Taco Bell Brand Soul, learn about our growth strategy and meet and develop relationships with Business and Operations support teams and other franchisees.

FDD, p. 41.

26. Due to the high number of locations and geographic distances, Defendants manage compliance with their centralized policies, practices, or procedures concerning its daily outside maintenance obligations, and obligations to maintain, repair, and/or replace features within its Parking Areas, through a director of operations, who supervises area supervisors or regional managers, who in turn directly supervise assistant general or general managers, and then individual

restaurant managers. Plaintiff is informed and believes that collectively, these positions constitute the "Principal Operator" charged with overseeing operations of Defendants' restaurants for compliance with Taco Bell's policies through regular and complete inspections of Defendants' restaurants.

27. Defendants' centralized maintenance and operational policies, practices, or procedures have systematically and routinely resulted in excessive sloping conditions in the Parking Areas of Defendants' facilities, in violation of the ADA and its implementing regulations.

28. On Plaintiff's behalf, investigators examined multiple locations that Plaintiff is informed and believes are owned, controlled, and/or operated by Defendants, and found the following violations which are illustrative of the fact the Defendants' existing policies, practices, or procedures are discriminatory, unreasonable, inadequate, and routinely result in excessive sloping conditions in the parking spaces, accessible routes and curb ramps:

    a.    2850 Washington Road, Augusta, Georgia

        i.    The purportedly accessible curb ramp projected into an access aisle.

    b.    7637 Lem Turner Road, Jacksonville, Florida

        i.    The purportedly accessible landing at the top of the curb ramp to the building had a running and cross slope exceeding 2.1%.

    c.    2517 Tobacco Road, Hehzibah, Georgia

        i.    The purportedly accessible curb ramp projected into an access aisle.

    d.    3222 Wrightsboro Road, Augusta, Georgia

      i.  The purportedly accessible curb ramp located on the route to the building entrance had a flare exceeding 10%[1].

29. As evidenced by the widespread excessive sloping conditions present in the Parking Areas of Defendants' facilities, absent a change in Defendants' existing policies, practices and/or procedures, excessive sloping conditions will continue to reoccur in Defendants' facilities even after they have been remediated.

## JURISDICTION AND VENUE

30. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188.

31. Dr. Maddox's claims asserted herein arose in this judicial district, and Defendants do substantial business in this judicial district.

32. Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2) in that this is the judicial district in which a substantial part of the events and/or omissions at issue occurred.

## CLASS ACTION ALLEGATIONS

33. Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23(a) and 23(b)(2) on behalf of herself and the following nationwide class:

> All wheelchair users with qualified mobility disabilities who encountered accessibility barriers within the Parking Areas of any Southeast QSR, LLC and DOES 1 to 25 location.

34. <u>Numerosity</u>: The class described above is so numerous that joinder of all individual members in one action would be impracticable. The disposition of the individual claims of the

---

[1] The 2010 Standards at §§ 405.2 and 406.1 set the maximum threshold for ramp running slopes at not steeper than 1:12, i.e., 8.3%, and limit curb ramp flares to not steeper than 1:10, i.e., 10%. The 2010 Standards continued the 1991 Standards without change. *See,* Appendix D to 28 C.F.R. Part 36, § 4.7.5, §4.8.2.

11

respective class members through this class action will benefit both the parties and this Court and will facilitate judicial economy.

35.     <u>Typicality</u>: Plaintiff's claims are typical of the claims of the members of the class. The claims of Plaintiff and members of the class are based on the same legal theories and arise from the same unlawful conduct.

36.     <u>Common Questions of Fact and Law</u>: There is a well-defined community of interest and common questions of fact and law affecting members of the class in that they all have been and/or are being denied their civil rights to full and equal access to, and use and enjoyment of, Defendants' facilities and/or services due to Defendants' failure to make their facilities fully accessible and independently usable as above described.

37.     <u>Adequacy of Representation</u>: Plaintiff is an adequate representative of the class because her interests do not conflict with the interests of the class members. Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the members of the class, and she has no interests antagonistic to the members of the class. Plaintiff has retained counsel who are competent and experienced in the prosecution of class action litigation, generally, and who possess specific expertise in the context of class litigation under the ADA.

38.     Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the class as a whole.

**SUBSTANTIVE VIOLATION**

**VIOLATION OF THE ADA, TITLE III**

**[42 U.S.C. §§ 12101, *et seq.*]**

**(Against all Defendants)**

39. Plaintiff restates each and every allegation set forth in the foregoing paragraphs of this Complaint with the same force and effect as if more fully set forth herein.

40. At all times relevant to this action, Plaintiff has been substantially limited in the major life activity of mobility. Accordingly, she is an individual with a disability defined by the ADA, 42 U.S.C. § 12102(2).

41. Defendants own, lease, and/or operate restaurants that are places of public accommodation as defined under Title III of the ADA. 42 U.S.C. § 12181(7)(F).

42. Plaintiff is informed and believes, and based thereon asserts, that Defendants' facilities were altered, designed, or constructed after the effective date of the ADA.

43. The ADA and the franchise agreements require the accessible features of Defendants' facilities, which include Parking Areas of their facilities, to be maintained so that they are readily accessible to and usable by individuals with mobility disabilities.

44. The architectural barriers described above demonstrate that Defendants' facilities were not constructed or altered in a manner that caused them to be readily accessible to and usable by individuals who use wheelchairs in the first instance and/or after that were not maintained or operated to ensure that they remained accessible to and usable by individuals who use wheelchairs.

45. Furthermore, the architectural barriers described above demonstrate that Defendants have failed to remove barriers as required by 42 U.S.C. § 12182(b)(2)(A)(iv).

46. Defendants' repeated and systemic failures to remove architectural barriers, to maintain the accessible features of their facilities, and/or modify their existing procedures to ensure compliance with the sloping requirements of the ADA's implementing regulations once constructed constitute unlawful discrimination on the basis of a disability in violation of Title III of the ADA.

47. Defendants' conduct is ongoing and continuous, and Defendants' conduct has harmed Plaintiff.

48. Unless Defendants are restrained from continuing their ongoing and continuous course of conduct, Defendants will continue to violate the ADA and inflict injury upon Plaintiff and the class.

49. Given that Defendants have not complied with the ADA's requirements to make Defendants' facilities fully accessible to, and independently usable by, individuals who use wheelchairs, Plaintiff invokes her statutory rights to declaratory and prospective injunctive relief, as well as costs and attorneys' fees.

## PRAYER FOR DECLARATORY JUDGMENT AND PROSPECTIVE INJUNCTIVE RELIEF

WHEREFORE, Plaintiff, on behalf of herself and the members of the Class, prays for:

a. A declaratory judgment that Defendants are in violation of the specific requirements of Title III of the ADA described above, and the relevant implementing regulations of the ADA, in that Defendants' facilities, as described above, are not fully accessible to, and independently usable by, individuals who use wheelchairs;

b. A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 C.F.R. § 36.501(b) that (i) directs Defendants to take all steps necessary to remove the architectural barriers described above and to bring their facilities into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that the facilities are fully accessible to, and independently usable

        by, individuals who use wheelchairs; (ii) directs Defendants to modify their existing policies, practices and/or procedures to prevent the reoccurrence of excessive sloping conditions in the Parking Areas of their facilities post-remediation; and (iii) directs that Plaintiff shall monitor Defendants' facilities to ensure that the injunctive relief ordered above remains in place.

c.     An Order certifying the class proposed by Plaintiff, naming Plaintiff as class representative, and appointing her counsel as class counsel;

d.     Payment of costs of suit;

e.     Payment of reasonable attorneys' fees pursuant to 42 U.S.C. § 12205 and 28 C.F.R. § 36.505; and

f.     The provision of whatever other relief the Court deems just, equitable, and appropriate.

Dated: December 6, 2023                              Respectfully Submitted,

                                                              */s/ John T. Stembridge*
                                                               John T. Stembridge
                                                               Georgia Bar No. 678605
                                                               **STEMBRIDGE TAYLOR LLC**
                                                               2951 Piedmont Road, Suite 200
                                                               Atlanta, GA 30305
                                                               Phone: 404-604-2691
                                                               john@stembridgetaylor.com

                                                               Benjamin J. Sweet
                                                               *Pro hac vice admission to be filed*
                                                               **NYE, STIRLING, HALE, MILLER & SWEET, LLP**
                                                               1145 Bower Hill Road, Suite 104
                                                               Pittsburgh, PA 15243
                                                               Phone: 412-857-5350
                                                               ben@nshmlaw.com

                                                               *Attorneys for Plaintiff and the Class*